UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WADE MURRAY, | ) |
| | ) |
|     PLAINTIFF | ) |
| | ) |
| v. | )     CIVIL NO. 1:18-CV-56-DBH |
| | ) |
| NEW DHC, INC., ET AL., | ) |
| | ) |
|     DEFENDANTS | ) |

**DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

This is an employment discrimination case. The plaintiff-employee claims that his employer[1] terminated his employment because of his disability and because he took medical leave. He seeks relief under the Americans With Disabilities Act (ADA), the Maine Human Rights Act (MHRA), the federal Family and Medical Leave Act (FMLA), and Maine's Family Medical Leave Requirements Act (FMLR). Compl. ¶¶ 69-86 (ECF No. 1). The defendant-employer has moved for summary judgment on all counts. I **GRANT** the motion in part and **Deny** it in part.

For purposes of ruling on the motion I credit the employee's account since he is the nonmoving party. Although the employer has put forward a strong alternative version to the employee's account, it is for a jury to decide between the two.

---

[1] I treat all the defendants as one, as the parties have done. Stipulation #1 (ECF No. 35-1).

***Disability Discrimination and Failure to Accommodate Under the ADA and MHRA***

I **DENY** the motion for summary judgment on Counts I and III, the ADA and MHRA claims, respectively. There is a genuine dispute as to one or more material facts over the reason for, and circumstances of, the employee's termination.[2]

The employee initially obtained approved medical leave based upon a note from his primary care provider. Defs.' Statement of Material Facts (Defs.' SMF) ¶ 11 (ECF No. 29). The employee has testified that after initially receiving that leave, he received approval from his medical provider to return to work, informed his employer of that fact repeatedly, but was not permitted to return to work. Pl.'s Statement of Additional Material Facts (Pl.'s SAMF) ¶¶ (54)-(59) (ECF No. 34). The employee was never advised that there was a time limit on his leave nor given any warning that it was about to expire. Id. ¶¶ (65)-(66). He was told by management that he needed a note from a psychiatrist to return to work,[3] Pl.'s Opposing Statement of Material Facts (Pl.'s OSMF) ¶ 14 (ECF No. 34), but a Human Resources employee later testified at an unemployment compensation hearing that a medical note would have been sufficient and that she would have accepted such a note from the physician's assistant who provided the initial note

---

[2] For purposes of its motion, the employer concedes that the employee suffered from a disability within the meaning of both federal and Maine law. Defs.' Mot. for Summ. J. (Defs.' Mot.) at 9-10 (ECF No. 28). It challenges whether he was a qualified individual, but I view the facts in the light most favorable to the employee, and he testified that he had been cleared to return to work. So he has established a *prima facie* case. The employer has offered a legitimate, non-discriminatory basis for its decision, but as I describe in text the employee has made a factual case for pretext. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[3] He was not told of this requirement initially. See, e.g., Pl.'s Opposing Statement of Material Facts (Pl.'s OSMF) ¶ 34. Once he learned of the requirement, there is a dispute over why he did not obtain the note. The employee testified that it was the psychiatrist's fault and that he had to go to the psychiatrist's supervisor to get action; the psychiatrist testified that the employee failed to follow up with him. There is a treatment note of February 29, 2016, where the psychiatrist records progress and states "so long as he does not appear at work intoxicated there appears to [be] no reason to restrict [h]im from working." Progress Notes Report (ECF No. 35-8).

that resulted in his taking leave. Id. ¶ 43. When the employee first received his notice of termination he asked for "a couple of days" to get a medical provider's note, Murray Dep. at 125:18-20 (ECF No. 30-1); Pl.'s SAMF ¶ (69), but management told him it was too late. His supervisor also told him that he "wasn't mentally stable to work." Murray Dep. at 111-12; Pl.'s OSMF ¶ 21. After unemployment compensation hearing testimony that his primary medical provider's note would have been sufficient, the employee provided such a note, but the employer again said it was too late. Pl.'s OSMF ¶ 43. The manager who made the recommendation to terminate the employee, see Morang Dep. at 74 (ECF No. 30-14), testified that an earlier 2012 conversation with the employee when the employee was distraught and obtained leave "never left my mind" and that the manager was "afraid of—of something happening in the workplace." Pl.'s SAMF ¶ (27); Morang Dep. at 46-48.

I conclude that there are factual issues over whether the employer's explanation that it terminated the employee for his failure to obtain a health care provider's note was pretextual for disability discrimination and whether the refusal to give the employee the extra "couple of days" that he requested for the note[4] was a denial of a reasonable accommodation.[5]

---

[4] The employer argues that under the MHRA, the Law Court has said that additional leave is not a reasonable accommodation if the employee is currently unable to perform his essential duties. Carnicella v. Mercy Hosp., 168 A.3d 768, 774 (Me. 2017). Here, however, the employee had told his employer that he was cleared to return to work and the employer declined to take him back. Carnicella therefore does not control, because this employee was not seeking additional leave.

[5] See Criado v. IBM Corp., 145 F.3d 437, 444 (1st Cir. 1998) ("If the termination was the result of a communication mistake [the plaintiff] should have been reinstated once her physician explained her condition and prognosis and asked for additional leave.") (internal citation omitted).

I recognize the parties' disagreement over whether the MHRA requires the employer to engage in an interactive process. Compare Carnicella v. Mercy Hosp., 168 A.3d 768, 775 (Me. 2017) (no such obligation on the employer's part because it is only an affirmative defense); Kezer v. Cent. Me. Med. Ctr., 40 A.3d 955 (Me. 2012) (same), with Code Me. R. tit. 94-348 Ch. 3, § 3.02 ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a physical or mental disability in need of the accommodation.") The defendant seems to have the better of that argument, given the Law Court's unambiguous language,[6] but my resolution of that disagreement awaits the development of a trial record.

*Medical Leave*

I **GRANT** the motion for summary judgment as to Counts II and IV, the FMLA claim and the Maine FMLR claim, respectively. The employee asserts a retaliation claim under these two statutes, Pl.'s Opp'n to Mot. for Summ. J. at 16 (Pl.'s Opp'n) (ECF No. 33), claiming that his employer terminated his employment because he took medical leave.[7] For summary judgment purposes, the employer concedes that the employee engaged in protected activity by taking leave and that his termination in June 2016 was an adverse employment action. Defs.' Mot. for Summ. J. (Defs.' Mot.) at 25 (ECF No. 28). But the employer

---

[6] The employer "was under no obligation to propose, identify, or consult with [the employee] regarding reasonable accommodations." The statute "does not affirmatively and independently establish a duty on an employer to identify reasonable accommodations for a disabled employee." Carnicella, 168 A.3d at 775. See generally 1 James B. Haddow, et al., A Practical Guide to Employment Law in Maine (1st ed. 2019) § 4.10.3, p. 4-64, § 5.4.3, p. 5-12.

[7] The parties do not distinguish between the FMLA and the Maine FMLR claims, nor do I.

4

disputes causation (that his taking medical leave motivated the termination), id., a necessary part of the three-element analysis. Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 719 (1st Cir. 2014) ("To make out a *prima facie* case of FMLA retaliation, an employee must show: . . . 'there was a causal connection between [his] protected conduct and the adverse employment action.'").

In opposing summary judgment on causation on these two Counts, the employee is very brief: "For the same reasons stated above on these issues [ADA and MRHA arguments on causation and pretext], [the plaintiff] has presented more than enough evidence to reach [a] jury on whether he was fired for taking FMLA and Maine FMLR leave." Pl.'s Opp'n at 16. That argument is insufficient.

According to the First Circuit, "[i]n an FLMA retaliation case, the employer's intent—*i.e., why* the employer fired or acted against the employee—matters." Carrero-Ojeda, 755 F.3d at 719 (emphasis in original). Carrero-Ojeda was decided on a 12(b)(6) motion where the plaintiff had to show only a plausible claim. See id. at 722. Even under that relaxed standard, the First Circuit rejected the claim, saying that "temporal proximity . . . is not enough" to infer bad motive. Id. at 720. In Carrero-Ojeda, the adverse action occurred *during* the FMLA leave. Id. But in this case, the FMLA leave expired about three months *before* the termination. So temporal proximity here is even weaker.

I have said that there are disputed facts from which a jury could find that the employee's disability was a factor in his ultimate termination or that his employer did not sufficiently accommodate his needs under federal and state anti-discrimination law. But those disputed facts, viewed in the light most

favorable to the employee, do not translate into an inference that his 12 weeks of medical leave motivated his termination. Like the record in Carrero-Ojeda, the employee "gives us no facts beyond the timing of [his] discharge—*e.g.*, no negative comments, complaints, or expressions of reluctance by [his] superiors or co-workers about [his] FMLA leave-taking, no discussion of [his] FMLA leave status in performance reviews, etc.—that would lead us to think that defendants took [his] FMLA requests or leave status into account when deciding to discharge [him]." Id. (internal citation omitted). I have carefully reviewed the employee's opposing and additional statements of material facts, and I see nothing to support an inference that his taking the protected 12 weeks of medical leave was a motivating factor in the employer's decision to terminate him months later. The timing here does not support a retaliation claim. Summary judgment is therefore **GRANTED** on Counts II and IV.

## CONCLUSION

Summary judgment is **GRANTED** on Counts II and IV and **DENIED** on Counts I and III.

**SO ORDERED.**

**DATED THIS 7ᵀᴴ DAY OF AUGUST, 2019**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**